UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXANDER MARK GIERBOLINI, I
o/b/o A.M.G., II, a minor,

    Plaintiff,

v.                                                                             Case No. 8:20-cv-1797-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his minor child's ("Claimant") claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.  Procedural Background**

Claimant's mother, Carolina Gierbolini,[2] filed an application for SSI on behalf of Claimant in March 2012 (Tr. 217–22). In an opinion dated February 13,

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[2] Ms. Gierbolini applied for disability on Claimant's behalf however, Claimant's father, Alexander Mark Gierbolini I, brought this action in federal court and is therefore the plaintiff in this case (*see* Tr. 217–22).

2013, Social Security Administration ("SSA") found Claimant disabled as of March 9, 2012 (Tr. 109–19). The Commissioner conducted a continuing disability review and found Claimant no longer disabled initially and upon reconsideration (Tr. 99–100, 158). Per Ms. Gierbolini's request, the ALJ held a hearing at which Ms. Gierbolini appeared and testified (Tr. 34–81). Following the hearing, the ALJ issued an unfavorable decision finding Claimant not disabled and accordingly denied Ms. Gierbolini's claim for benefits (Tr. 8–31). Subsequently, Ms. Gierbolini requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff, Mr. Gierbolini, then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 1383(c)(3).

### B.     Factual Background and the ALJ's Decision

At Claimant's initial determination of disability in 2013, he was found to have the severe impairments of attention-deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), and a speech and language impairment (Tr. 114). Claimant was ultimately determined to be disabled at the time because his severe impairment of ADHD functionally equaled the listing with marked limitations in attending and completing tasks as well as in interacting and relating with others (Tr. 114–15).

As for the decision on appeal, the ALJ first conducted a hearing and reviewed the evidence of record. Then, at step one of the continuing disability review the ALJ found that in the time since that original determination, Claimant had experienced medical improvement in those impairments (Tr. 15). The ALJ then determined

Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16–20). The ALJ also determined that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (Tr. 21–24). In doing so, the ALJ found Claimant had:

- less than a marked limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;
- marked limitation in interacting and relating with others;
- less than marked limitation in moving about and manipulating objects;
- less than a marked limitation in the ability to care for himself; and
- no limitation in health and physical well-being

(Tr. 22–24). In making that finding, the ALJ indicated that she considered all of Claimant's symptoms and the relevant evidence in the record, including objective medical evidence, other relevant evidence from medical sources, medical opinions, and prior administrative findings (Tr. 21). The ALJ also considered information from other sources, such as schoolteachers and family members (Tr. 21).

## II.

To be entitled to benefits, an individual under the age of 18 must demonstrate that he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The

Act requires the Commissioner to review a disabled child's continued eligibility for benefits at least once every three years. *See* 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). The Commissioner has established a three-step medical improvement sequential evaluation process for determining whether a child continues to be disabled within the meaning of the Act. 20 C.F.R. § 416.994a(b).

At step one, the ALJ must determine whether there has been medical improvement in the impairments that were present at the time of the most recent favorable determination or decision finding the child disabled (the most recent favorable determination is called the "comparison point decision" or "CPD," and the impairments that were present at the CPD are called the "CPD impairments"). 20 C.F.R. § 416.994a(b)(1); SSR 05-03p. Medical improvement is any decrease in medical severity, except for minor changes. 20 C.F.R. § 416.994a(c). It must be based on changes in the symptoms, signs, or laboratory findings associated with the impairments. 20 C.F.R. § 416.994a(c). If there has been no medical improvement, the child is still disabled, unless one of the exceptions to medical improvement applies. 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, the inquiry proceeds to step two.

At step two, the ALJ considers whether the CPD impairments still meet or medically or functionally equal the severity of the listed impairments that they met or equaled at the time of the CPD. See 20 C.F.R. § 416.994a(b)(2); SSR 05-03p. If the impairments still meet or medically or functionally equal the listings, the child is still disabled, unless one of the exceptions to medical improvement applies. 20

C.F.R. § 416.994a(b)(2). If they do not, the inquiry proceeds to step three. 20 C.F.R. § 416.994a(b)(2).

At step three, the ALJ considers whether the child is currently disabled considering all current impairments, including those the child did not have at the time of the CPD and those that the Commissioner did not consider at that time. 20 C.F.R. § 416.994a(b)(3). This first involves determining whether the child's new or unconsidered impairments are "severe," meaning more than slight abnormalities that cause no more than minimal functional limitations. 20 C.F.R. § 416.994a(b)(3)(i); 20 C.F.R. § 416.924(c). If they are severe, the question is whether they meet or medically equal the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. See 20 C.F.R. § 416.994a(b)(3)(ii). If they do, the child's disability continues. 20 C.F.R. § 416.994a(b)(3)(ii). If not, the question is whether they functionally equal the listings. 20 C.F.R. § 416.994a(b)(3)(iii). If they do, the child's disability continues. 20 C.F.R. § 416.994a(b)(3)(iii). If not, the child's disability has ended. 20 C.F.R. § 416.994a(b)(3)(iii).

The determination of whether a child's impairment functionally equals the listings requires an assessment of the child's functioning in six broad areas of functioning, called "domains." These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

> (1) Acquiring and using information:
> (2) Attending and completing tasks;
> (3) Interacting and relating with others;
> (4) Moving about and manipulating objects;
> (5) Caring for one's self; and
> (6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)–(vi). A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitation in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The

Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff argues the ALJ erred at step one of the sequential evaluation in finding Claimant's CPD impairments had improved.[3] For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

As already noted, at step one of the sequential evaluation the ALJ must determine if the claimant has experienced medical improvement since his last CPD. 20 C.F.R. § 416.994a(a)(1). Medical improvement is any decrease in the medical severity of the impairments that were present and documented in the CPD. 20 C.F.R. § 916.994a(c). In making this determination, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence to determine if there has been

---

[3] Plaintiff challenges only the ALJ's assessment that Claimant's impairments had medically improved and makes no argument regarding the other steps in the sequential evaluation (Doc. 50, at 5–8). Thus, such arguments are waived, and the Court will not address the case beyond step one. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

medical improvement. *McAulay v. Heckler*, 749 F.2d 1500, 1500 (11th Cir. 1985) (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir.1984); *Klaes v. Comm'r of Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012); 20 C.F.R. § 416.994a(b)(1). The Eleventh Circuit has made it clear that a cursory comparison is insufficient. Rather, "[t]he ALJ must 'actually compare the previous and current medical evidence to show that an improvement occurred.'" *Klaes*, 499 F. App'x at 896 (quoting *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984)). "If the ALJ fails to evaluate the prior medical evidence and make such a comparison, we must 'reverse and remand for application of the proper legal standard.'" *Id.* (quoting *Vaughn v. Heckler*, 727 F.2d at 1043). Moreover, the ALJ's mere reference to the CPD does not equate to a comparison of the original medical evidence and the new medical evidence required to make a finding of medical improvement. *See Freeman*, 739 F.2d at 566; *Soto v. Comm'r of Soc. Sec.*, No. 5:19-cv-568-Oc-MAP, 2020 WL 4048210, at *2 (M.D. Fla. July 20, 2020) (reversing and remanding ALJ's decision for failure to compare medical evidence, noting ALJ's mentioning of the plaintiff's CPD did not equate to a comparison of original medical evidence to new medical evidence required to find medical improvement); *Jasper v. Colvin*, No. 8:16-CV-727-T-23AEP, 2017 WL 655528, at *4 (M.D. Fla. Jan. 31, 2017), *report and recommendation adopted sub nom. Jasper v. Comm'r of Soc. Sec.*, No. 8:16-CV-727-T-23AEP, 2017 WL 638389 (M.D. Fla. Feb. 16, 2017) ("Nowhere in her decision does the ALJ attempt to engage in a comparison of the old and new medical evidence."); *Lane o/b/o R.W. v. Comm'r of Soc. Sec.*, No. 8:20-CV-647-SPF, 2021 WL 3701559, at *3 (M.D. Fla.

Aug. 20, 2021) ("All of these sources pertain to the post-CPD timeframe. As a result, the ALJ's conclusion … is flawed.").

Here, the ALJ began her assessment at step one by evaluating the evidence from the time period of the CPD, which was issued in February 2013 (Tr. 13). The ALJ noted that at that time, Claimant's psychologist indicated that he had trouble paying attention and he had "anger issues with violence," symptoms related to his ADHD and ODD (Tr. 15, 536–49, 715–16, 717–18). Treatment providers reported that Claimant struggled at times with anxiety, carelessness, difficulty finishing projects, difficulty with organization skills, distractibility, excess energy, fidgeting, forgetfulness, inability to concentrate, inattentiveness, and inability to stay on task (*see, e.g.,* Tr. 536, 538, 715). At that point, Claimant was in special education classes nearly full-time and "had receptive and expressive language delays, for which he also attended speech therapy" (Tr. 15, 372–76). Teachers reported hyperactivity, aggression, attention problems, and issues with social skills (Tr. 389). Teachers also noted Claimant overreacted when he made mistakes by "crying and yelling," struggled with reading comprehension and verbalizing answers, was impulsive, and were often required to remove him from the group for disruptive emotional outbursts (Tr. 379–80, 383, 385). The ALJ considered Claimant's teachers' reports from the time, summarizing that the teachers reported Claimant had "many serious problems in maintaining attention and concentration and interacting with others," he would sometimes yell during class, and thus he was on a behavioral plan (Tr. 15, 378–87, 389–408, 491–500).

The ALJ noted that after the CPD, Claimant's medication for ADHD was changed and he was also diagnosed with Asperger's syndrome (Tr. 15, 579, 581–82). The ALJ cited that in the fall and winter of 2013, Claimant was reportedly doing well in school, especially math, and had good behavior overall at home and school while on medication (Tr. 15, 577, 579). By 2014, Claimant's pediatrician found that he had normal motor, neurological, and language development, but was delayed with his behavioral development (Tr. 15, 593). In the early months of 2014, 2015, and 2016, Claimant was in an appropriate grade for his age and "academically successful at school without learning concerns" (Tr. 583, 587, 591). By June of 2015, Claimant's mother stated to his neurologist that he was doing "fairly well" after an increase in one of his medications (Tr. 15, 554–55). Claimant had less afternoon irritability, and his outbursts were limited with the increased medication (Tr. 15, 554). The neurologist noted that Claimant was below level in his reading comprehension, but the school was not retaining him for the next grade (Tr. 554). The ALJ noted that in the fall of 2015, Claimant's parents reported that he was doing "fairly well" in fourth grade, he seemed to be focused, and was "not having any major meltdowns" (Tr. 15, 550). Toward the end of the school year, the ALJ noted that Claimant was still reportedly doing well in school, though he had some issues with completing work for a couple of weeks and had experienced sleep disturbances (Tr. 15, 612, 614). Claimant had a stable appetite and had no behavioral problems at school (Tr. 15, 612).

The ALJ cited more current evidence including that in the beginning of 2016, Claimant began a new individualized education plan ("IEP"), under which he would remain in special education classes for developing reading comprehension and writing skills but a regular classroom for behavior management and social skills (Tr. 15, 618–20). While in the fourth grade, Claimant tested at a fourth-grade level in reading, a sixth-grade level in writing, and a fifth-grade level in math (Tr. 619). The ALJ noted that in March of 2016 Claimant was reported to have had some issues with waking up in the middle of the night but no issues with falling asleep (Tr. 15, 608). However, his physical exam was normal, and his neurologist indicated that through use of Vyvanse and Adderall, Claimant had improved significantly both behaviorally and academically (Tr. 15, 608). One of Claimant's teachers commented that he was "one of the best students in the class" and was "very focused completes his work, and they [were] having no problems" (Tr. 608). By the start of the 2016–2017 school year, Claimant's parents still reported some sleep disturbances but indicated that he was in mainstream classes and was doing very well (Tr. 15, 632). Claimant reportedly had no issues with behavior, focusing, or participating in classes (Tr. 15, 632). The ALJ noted that all physical findings remained normal and there were no reported medication side effects (Tr. 15, 632).

Upon review, this Court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178. Considering the foregoing, this

Court finds the ALJ's decision that the Claimant's CPD impairments had improved was supported by substantial evidence.

The Court also finds that the ALJ applied the correct legal standards in her conclusion that the Claimant's CPD impairments had improved. Plaintiff argues the ALJ failed to adequately compare the evidence prior to the CPD when making the determination that Claimant had medically improved (Doc. 50, at 7). Plaintiff is correct that if the ALJ had failed to evaluate the prior medical evidence and make such a comparison, the Court would reverse and remand for application of the proper legal standard. *Klaes*, 499 F. App'x at 896. However, here, the ALJ properly considered the pre-CPD evidence in making the comparison. In discussing the pre-CPD evidence, the ALJ considered evidence contained in the following exhibits:

> Exhibit 2F, office treatment records from Carolina Psychiatry PC dated 2/14/2012 through 9/27/2012;
>
> Exhibit 19F, progress notes from Carolina Psychiatry PC dated 2/14/2012 through 3/13/2012;
>
> Exhibit 19E, disability development and documentation from Cumberland Mills Elementary School dated 11/9/2012;
>
> Exhibit 20E, teacher questionnaire from Cumberland Mills Elementary School, dated 1/7/2013;
>
> Exhibit 26E, teacher questionnaire from JW Coon Elementary School, dated 5/16/2012

(Tr. 15). Importantly, these sources mirror the sources considered in the CPD (Tr. 110–11). Moreover, the ALJ did not give this evidence a cursory review; rather, as outlined in the foregoing paragraphs, the ALJ considered the evidence in depth (*see also* Tr. 15). The ALJ's consideration of this evidence distinguishes this case from

the cases in which remand was warranted due to the ALJ's failure to consider the pre-CPD evidence. *See Freeman*, 739 F.2d at 566; *Soto*, 2020 WL 4048210, at \*2; *Jasper*, 2017 WL 655528, at \*4; *Lane o/b/o R.W.*, 2021 WL 3701559, at \*3. Moreover, Plaintiff fails to cite any specific evidence that the ALJ failed to consider in the comparison.

Finally, to the extent Plaintiff argues that the medical expert at the hearing failed to address the CPD evidence, this argument is rejected. Plaintiff cites no authority requiring the medical expert to consider the CPD evidence nor does Plaintiff otherwise develop the argument (Doc. 50, at 7). *See Outlaw v. Barnhart*, 197 Fed. App'x 825, 828 n. 3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority about the claim); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."); *Howze v. Soc. Sec. Admin.*, No. 21-11066, 2022 WL 152236, at \*3 (11th Cir. Jan. 18, 2022) ("Because [the plaintiff] cites to no authority for this argument, she has abandoned it."). At any rate, the ALJ did not rely on the medical expert's opinion in her step one analysis suggesting that even if there were error here, it would be harmless as the Court has already held this decision was supported by substantial evidence (*see* Tr. 15–16).

In sum, the Court finds that the ALJ's decision is supported by substantial evidence and applied the corrected legal standards in her conclusion that the Claimant's CPD impairments had improved.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 21st day of March, 2023.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:   Counsel of Record